**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert G Furst, | No. CV-21-01287-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Linda Mayne, et al., | |
| Defendants. | |

Pending before the Court are Defendants Linda Mayne and Stephen S. Mayne's[1] motions to strike and to dismiss, which are fully briefed. (Docs. 20, 22, 23, 29, 36, 37.) For the following reasons, the Court grants the motion to dismiss in part and denies the motion to strike.

**I. Background[2]**

David Furst ("David") and Hanna Furst ("Hanna") had two children: Robert Furst ("Mr. Furst") and Linda Mayne ("Ms. Mayne"). David and Hanna established the Furst Family Trust ("the Trust"), a revocable estate planning trust in which they were the Trustors, the Co-Trustees, and the primary beneficiaries. David and Hanna also formed

---

[1] Mr. Furst makes no claims against Stephen S. Mayne; instead, he is named as a defendant merely for the purpose of binding the community estate.

[2] The background comes entirely from the amended complaint at Docket #20. The Court notes that this version of the complaint is simply titled "complaint." In actuality, it is an amended complaint; the original was filed months earlier at Docket #1. For clarity, the Court will refer to the complaint at Docket #20 as the amended complaint and the complaint filed at Docket #30 as the second amended complaint.

DHF Corporation, in which David was the sole employee and both David and Hanna were Co-Trustees of the DHF Corporation Profit Sharing Plan ("the Plan").

As alleged by Mr. Furst, Ms. Mayne hoodwinked their parents by having them sign several documents that (1) appointed Mr. Furst and Ms. Mayne as co-trustees of the Trust in place of their parents, (2) appointed Mr. Furst and Ms. Mayne as co-trustees of the Plan in place of their parents, and (3) granted Ms. Mayne durable financial power of attorney as to both parents. Once both parents found out what they had signed, the family relationship deteriorated.

A year later, David died. Hanna lived in an assisted living facility at that time. A month later, Ms. Mayne contacted TD Ameritrade to freeze a little over a million dollars in assets held there, effectively preventing re-investment for the benefit of Hanna or distribution to her benefit. She used other assets in the Family Trust to pay for Hanna's living expenses. On occasion, she also used her personal funds to pay for Hanna's living expenses and reimbursed herself out of the Trust.

While Ms. Mayne was still co-trustee with Mr. Furst, she told him that he "should pay the bills for [Hanna's] living expenses, and then she [Ms. Mayne] would then write checks to him from the Family Trust accounts to reimburse him." But she never wrote those checks, and $150,000 of cash advances went unreimbursed.

Mr. Furst now seeks to recover the unreimbursed payments from Ms. Mayne personally under the theories of breach of fiduciary duty, common law fraud, and constructive fraud. (Doc. 20.) Ms. Mayne has moved to dismiss the first amended complaint for failure to state a claim, and also seeks to strike certain language from the first amended complaint on the grounds that it is a personal attack irrelevant to the claims.

**II. Discussion**

**A. The operative complaint**

Defendants moved to dismiss Mr. Furst's amended complaint on December 22, 2021. (Doc. 23.) On January 17, 2021, Mr. Furst filed three documents: (1) a response in opposition to Defendants' motion to dismiss (Doc. 29), (2) a second amended complaint

(Doc. 30), and (3) a notice of the filing of an amended complaint, together with a copy of the second amended complaint showing the changes from its predecessor in redline (Doc. 31). Mr. Furst's filing of a second amendment complaint has caused a stir because Mr. Furst did not obtain leave of Court before filing it. After amending a complaint for the first time, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Mr. Furst did not meet either requirement for amending his complaint a second time. As such, the second amended complaint filed at Docket #30 has no legal effect and will be stricken. The amended complaint filed at Docket #20 remains operative.

With that said, the Court will not strike the notice and accompanying redlined second amended complaint Mr. Furst filed at Docket #31. In his response in opposition to Defendants' motion to dismiss, Mr. Furst requests leave to amend in the event the Court grants the motion. (Doc. 29 at 12.) Paragraph 3 of the Court's standard order discouraging motions to dismiss therefore required Mr. Furst to "submit, no later than the time [he] files a response to the motion, a proposed amended complaint that complies with LRCiv 15.1(a) and contains all further allegations [he] could make." (Doc. 9 at 2.) The Court will treat the notice filed at Docket #31 as serving this purpose. The notice operates as a *proposed* second amended complaint, which assists the Court in determining whether leave to amend would be futile. But the Court has not yet granted leave, and therefore Mr. Furst should not have taken the additional step of actually filing his proposed second amended complaint at Docket #30.

**B. The motion to dismiss**

**1. Compliance with the Court's standard order**

Before reaching the merits of the motion to dismiss, the Court must address Mr. Furst's procedural challenge, which argues that the motion to dismiss is improper because it flouts the Court's standard order providing:

> Any motion under Rule 12(b)(6) or 12(c) must certify the parties conferred in good faith but were unable to agree that the complaint is curable by a permissible amendment. Motions

that do not contain the required certification may be stricken by the Court.

(Doc. 9 at 2.) Mr. Furst doesn't argue that Defendants failed to include the certification in their motion to dismiss; instead, he claims that "[n]o conference ever occurred" because "Defendants' counsel sent a letter demanding the dismissal of all claims, with prejudice, and stated that, if all claims were not dismissed, he would file a Motion to Strike and a Motion to Dismiss." (Doc. 29 at 2.) Mr. Furst was free to respond to that letter and confer. Either he did not, or he did.[3] Regardless, any failure at conferring falls on his head because Defendants satisfied their obligations under the standard order by sending a letter and an email, which "explain[ed] to [Mr. Furst] the reasons why Defendant[s] believe[] the complaint fails to state a claim for relief," and invited Mr. Furst to discuss "whether any of the deficiencies identified by Defendant[s] can be cured through an amended complaint." (Doc. 9 at 2; *see* Doc. 37-1 at 4-6.) The Court's standard order imposes bilateral obligations, and Defendants complied with theirs.

**2. Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint fails this "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Gilmore v. DJO Inc.*, 663 F. Supp. 2d 856, 859 (D. Ariz. 2009) (quoting *Twombly*, 550 U.S. at 555)). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

---

[3] Defendants note that they possess a copy of Mr. Furst's email response, which they declined to submit into evidence because of some allegedly "vicious and defamatory attacks against Mrs. Mayne." (Doc. 37 at 13.) Although the Court need not parse this email to resolve the issue at hand, it notes that most modern computers enable redaction.

### 3. Election of remedies

Ms. Mayne's first argument invokes the election of remedies doctrine, which "precludes pursuit of two inconsistent remedies based on the same claim." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 276 P.3d 11, 30 (Ariz. Ct. App. 2012) (quoting *Phillips v. Adler*, 657 P.2d 893, 895 (Ariz. Ct. App. 1982)). For instance, a plaintiff cannot claim both fraud and breach of contract against the same defendant for the same action. *Id.* (quoting *Jennings v. Lee*, 461 P.2d 161, 165 (Ariz. 1969)). When two defendants are at play, however, the matter is more complicated. "[A] plaintiff who has alternative substantive rights against two persons and by pursuing a substantive right against one person, that pursuit acts as a ratification of the wrongful act of the other, the plaintiff is precluded from subsequently pursuing his remedy against the wrongdoer whose act was ratified." *Hennesy Equip. Sales Co. v. Valley Nat. Bank*, 543 P.2d 123, 124 (Ariz. 1975).

Here's how it played out in *Hennesy*. A Hennesy employee forged checks drawn on Hennesy's account at Valley National Bank. *Id.* at 124. Hennesy sued the employee for fraud, obtaining a recovery, and then sued the bank for breach of contract. *Id.* Just as here, the bank argued that Hennesy had elected its remedy when it sued the employee and could not turn right around and sue the bank. *Id.* The court disagreed. It found that two separate wrongs had befallen the plaintiff: breach of contract by the bank by "relinquishing money" absent the signed authority of the plaintiff and (2) interference with the contractual relationship between the bank and the plaintiff by the forger. *Id.* at 126. In other words, wrongs that sounded in contract and tort, respectively. *Id.* Thus, the court concluded that "[t]wo wrongs had been done the [plaintiff] and he should not be precluded from pursuing two consistent substantive rights arising from these harms." *Id.*

The circumstances here are not different. Mr. Furst first sued the Trust in state court, seeking the promised reimbursement of the funds he advanced the Trust for Hanna's care; he was not successful. Mr. Furst now sues Ms. Mayne for fraud for the funds he advanced the Trust at her behest. Just as in *Hennesy*, the wrongs are different. Against the trust, Mr. Furst has a claim that sounds in contract. Against Ms. Mayne personally, Mr. Furst has a

claim that sounds in tort. Thus, the doctrine of election of remedies does not bar his fraud claims against Ms. Mayne, although "this does not mean . . . that two recoveries can be had." *Id.* "When that damage has been satisfied, either by being made whole by the [defrauder] or by the [trust], the [plaintiff] can collect no more." *Id.*

### 4. Personal tort liability of a trustee

In Arizona, "[a] trustee is personally liable for torts committed in the course of administering a trust or for obligations arising from ownership or control of trust property, including liability for violation of environmental law, only if the trustee is personally at fault." A.R.S. § 14-11010 (emphasis added). Intentional torts, however, by virtue of being intentional, impose personal duties. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 22 (Ariz. 2002), *as corrected* (Apr. 9, 2002) ("[I]t would be anomalous to invoke a lack of a specific duty in dismissing a complaint for an intentional act. . . . The duty, if it must be so named, is obviously to refrain from intentional harm to others. At the level of intent, reference to duty becomes . . . needlessly academic. . . ." (alterations in original)). Consequently, a person may not avoid a claim of fraud merely because of trusteeship; even in such capacity, a person owes a personal duty to "refrain from intentional harm to others." *Id.*

The same is not true for the breach of fiduciary duty, which is not an intentional tort. Mr. Furst does not allege that Ms. Mayne owed him a fiduciary duty in a personal capacity. Instead, the fiduciary duty, as he alleges, arises out of her role as trustee. (Doc. 20 at 13.) Mr. Furst argues that a "confidential relationship" between him and his sister grounds the breach of fiduciary duty claim. But a claim for breach of fiduciary duty requires proof that "a fiduciary duty existed." *Goodman v. Dohmen*, 964 F.3d 798, 801-02 (9th Cir. 2019). And in Arizona, fiduciary relationships and confidential relationships are different animals altogether; one cannot take the other's stead. *Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp. 3d 479, 504 (D. Ariz 2020). Mr. Furst alleges no facts that show Ms. Mayne owed a fiduciary duty to Mr. Furst in her personal capacity; therefore she cannot be liable under the breach of fiduciary duty claim.

### 5. The elements of fraud

Ms. Mayne next argues that Mr. Furst has not pled that Ms. Mayne was "the proximate and consequent cause of [his] alleged injury," as required for a fraud claim. "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *McDowell v. Davis*, 448 P.2d 869, 871 (Ariz. 1968). Her argument goes like this: Mr. Furst was damaged when the Trust failed to reimburse him, "not by any alleged action or inaction of Mrs. Mayne," thereby breaking the causal chain. (Doc. 23 at 14.) But Mr. Furst alleged that Ms. Mayne refused to reimburse him out of the Trust accounts, over which she had control and which she promised to do. Mr. Furst sufficiently pled that Ms. Mayne was the proximate and consequent cause of his alleged injury.

### 6. Leave to amend

In compliance with the Court's standard order, Mr. Furst filed a proposed, redlined second amended complaint alongside his response to the motion to dismiss, in which he seeks leave to amend if the Court dismisses the operative complaint. (Docs. 29, 31-1.) But here, the Court dismisses only a portion of his operative complaint—that which alleges a breach of fiduciary duty claim against Ms. Mayne in her personal capacity. The Court therefore will analyze the propriety of amendment based on this claim alone.

Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). The Court considers four factors when determining whether leave to amend is appropriate: bad faith, undue delay, prejudice to the opposing party, and futility. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility alone justifies denying a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (1995). A motion to amend is futile if the amended portion fails to state a plausible claim for relief. *Chabrowski ex rel. ARTBE Enters., LLC v. Litwin*, No. CV-16-03766-PHX-DLR, 2017 WL 2841212, at *2 (D. Ariz. Jan. 19, 2017).

With respect to the breach of fiduciary duty claim, the proposed amended complaint has the same deficiency as its predecessor: the breach of fiduciary duty claim entirely hinges on Ms. Mayne serving as trustee and is devoid of any "facts to support any personal obligation" by Ms. Mayne. This particular amendment therefore is futile and leave to amend is denied.

### C. Motion to strike

Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." But the Court generally disfavors Rule 12(f) motions. *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010); *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHX-ROS, 2009 WL 2382998, at *1 (D. Ariz. Aug. 4, 2009); *Wailua Associates v. Aetna Cas. And Sur. Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation.").

Ms. Mayne seeks to strike from the amended complaint several allegations related to Mr. Furst's academic and professional successes, Ms. Mayne's comparatively fewer successes and greater missteps, and how she got Hanna and David to sign documents related to the Trust. (Doc. 22 at 6-8.) These allegations all relate to whether Ms. Mayne has the present intent that Mr. Furst act on the allegedly false promise. Mr. Furst's theory is that it is more likely that Ms. Mayne would attempt to defraud her brother when she harbored deep-seated resentment about their comparatively different successes and purportedly unequal love from parents. (Doc. 20 at 3.) And second, the alleged trickery explains why the whole family became "a united front" against her, making it more likely that she'd attempt to defraud Mr. Furst. The Court cannot say that these allegations have no possible bearing on the subject matter of the litigation. The motion to strike is denied.

**IT IS ORDERED** as follows:

1. Mr. Furst's unauthorized second amended complaint (Doc. 30) is **STRICKEN**.

2. Defendants' motion to dismiss (Doc. 23) is **GRANTED** in part. The breach of fiduciary duty claim is dismissed. The fraud and constructive fraud claims may proceed.

3. Defendants' motion to strike (Doc. 22) is **DENIED**.

Dated this 11th day of August, 2022.

_____
Douglas L. Rayes
United States District Judge